**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| DORETTE TSAGUE, | ) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 19-cv-03633-LKG<br>) |
| COASTAL SUNBELT, LLC, | ) Dated:  February 25, 2022<br>) |
| Defendant. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

## I.  INTRODUCTION

In this employment discrimination action, plaintiff, Dorette Tsague, alleges that defendant, Coastal Sunbelt, LLC ("Coastal"), discriminated against her upon the basis of race and national origin, and retaliated against her for lodging an internal complaint of race discrimination, in violation of Title VII, 42 U.S.C. § 2000e, Section 1983 and state law.  *See generally* Compl., ECF No. 1.  Coastal has moved for summary judgment in its favor on the issues of whether plaintiff can establish a prima facie case of discrimination and whether plaintiff can show pretext to prevail on her discrimination and retaliation claims, pursuant to Fed. R. Civ. P. 56.  *See generally* Def. Mot., ECF No. 35; Def. Mem., ECF No. 35-1.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2021).  For the reasons that follow, the Court **GRANTS-in-PART** Coastal's motion for summary judgment and **DISMISSES** the complaint.

## II.  FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Factual Background

Plaintiff, Dorette Tsague, alleges in this employment discrimination action that Coastal

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."); defendant's motion for summary judgment (Def. Mot.), memorandum in support thereof ("Def. Mem."), and the exhibits attached thereto ("Def. Ex.").

discriminated against her upon the basis of race and national origin, and retaliated against her by terminating her employment, in violation of Title VII, Section 1983 and state law.  *See generally* Compl.  As relief, plaintiff seeks, among other things, to recover monetary damages from Coastal.  *Id.* at Prayer for Relief.

As background, Coastal is a leading distributor of produce and dairy products in the Mid-Atlantic region, and East Coast Fresh, LLC is a subsidiary of Coastal.  Def. Mem. at 1; Def. Ex. 3 at 5.  Plaintiff is Black, and she is of Cameroonian descent.  Compl. at ¶¶ 5-6.

<u>Plaintiff's Relevant Employment History</u>

Plaintiff was employed by Coastal as a Value Stream Crew Member assigned to the custom cuts line.  *Id.* at ¶ 6.  Plaintiff worked the morning shift, which began at 8 a.m., and ended when the assigned work for the day was completed.  *Id.* at ¶ 7; Def. Mem. at 2.

Beginning in January 2019, Andrea Smith was plaintiff's Value Stream Manager on the custom cuts line.  Def. Mem. at 3; Def. Ex. 1 at 10 (Tsague Tr. 53).  Plaintiff alleges that Ms. Smith terminated the employment of several staff of African descent and that she "exhibited traits of favoritism towards Caucasian [employees]."  Compl. at ¶¶ 11-12.  Plaintiff also alleges that Ms. Smith "found fault in everything [that she would do] and often criticized her without justification or legitimate reason."  *Id.* at ¶ 13.

On January 21, 2019, Ms. Smith, along with two human resources officials, Marcela Orellana and Niya Morris, met with plaintiff to discuss a variety of performance concerns that arose in January 2019.  Def. Mem. at 3; Def. Exs. 7-9.  In this regard, it is undisputed that plaintiff received a written warning for disrespectful communication with coworkers and supervisors.  Def. Mem. at 4; Def. Ex. 7 at 1-2; Pl. Resp. at 3, ECF No. 41.  This warning related to an event that occurred on January 17, 2019, when plaintiff was observed yelling at a coworker for allegedly making a mistake.  Def. Mem. at 4; Def. Ex. 7 at 1-2; Pl. Resp. at 3.

It is also undisputed that plaintiff received a time and attendance warning on January 21, 2019, which states, in relevant part, that:

> Dorette, you have been observed by your line leads and assistant manager for taking an excessive amount of time in the gowning room.  You are allotted time of 5 min. (pending capacity) to clock in and gown up for the production floor.  Per our observations you are not meeting pace and

2

averaging 15-25 min. to gown up after clocking in. Your scheduled start time on your line is 8:20am. You have been late 5 out of the previous 16 shifts you have been scheduled for. Your tardiness ranges from 18 minutes to 116 minutes. This does not include the 15-25 minutes you typically spend in the gowning room. You are then late to the production floor on average 33 minutes to 141 minutes. This negatively affects the overall team morale and the targeted output time. You have been coached verbally multiple times from your assistant manager and line leads to arrive on time.

Def. Mem. at 4-5 (emphasis removed); Def. Ex. 8 (emphasis removed); Pl. Resp. at 3. In addition, plaintiff received a warning for a minor good manufacturing processes violation related to her failure to wash her hands before returning to work on January 16, 2019. Def. Mem. at 5; Def. Exs. 9-10; Pl. Resp. at 3. Lastly, it is undisputed that plaintiff had a conversation with Ms. Smith that involved a disagreement about plaintiff's lunch break on January 18, 2019. Def. Mem. at 4; Def. Ex. 7 at 1-2; Pl. Resp. at 3.

<u>Plaintiff's Letter Of Complaint</u>

On or about February 2, 2019, plaintiff submitted a letter of complaint to Coastal regarding Ms. Smith. Def. Mem. at 5-6; Def. Ex. 13. In the letter of complaint, plaintiff alleges that Ms. Smith treated her poorly and that Ms. Smith treated black associates differently than other associates. Def. Mem. at 6; Def. Ex. 13. And so, plaintiff requested a meeting to discuss these concerns. Def. Mem. at 6; Def. Ex. 13.

A meeting between plaintiff and Lisa Whittington, "Coastal's Chief People Officer," was subsequently held on February 8, 2019. Def. Mem. at 6. Following this meeting, Ms. Whittington spoke with Ms. Smith and she reviewed the circumstances of the written warnings issued to plaintiff. Def. Mem. at 6-7; Def. Ex. 2 at 26 (Whittington Tr. 77). On February 12, 2019, Ms. Whittington told plaintiff that there was no evidence to support the claim that Ms. Smith had discriminated against plaintiff based upon her race or national origin. Def. Mem. at 7.

<u>The Events Of March 15, 2019, And Plaintiff's Termination</u>

It is undisputed that, on the morning of March 15, 2019, plaintiff felt a pinch in her back while lifting a bucket of onions and that she visited the onsite Wellness Center at work. *Id.*; Pl. Resp. at 4. It is also undisputed that, after being examined by a physician's assistant, plaintiff was released to work without any restrictions and that plaintiff subsequently clocked out for the day at 4:35 p.m. Def. Mem. at 7-8; Pl. Resp. at 4.

The parties disagree about whether plaintiff received approval from her line supervisor, "Martha," to leave work early on March 15, 2019.  Def. Reply at 3-5, ECF No. 42; Pl. Resp. at 4-5.  But, it is undisputed that Martha told Ms. Smith and Ms. Whittington that she did not give plaintiff permission to leave work early on that day.  Def. Reply at 4; *see generally* Pl. Resp.  It is also undisputed that Ms. Smith and Ms. Whittington believed that plaintiff's absence from work on the afternoon of March 15, 2019, was unauthorized.  Def. Reply at 4; *see generally* Pl. Resp. at 4-5.

On March 16, 2019, Ms. Smith emailed Ms. Whittington requesting to terminate plaintiff's employment.  Def. Mem. at 7 (quoting Def. Ex. 20) ("I am submitting for a termination for Dorette.  She left today approximately 3 hours early without communicating to me, Blanca or anyone on the production floor.  I did not give her permission to leave early.  Can we please terminate her Monday?").  On March 19, 2019, Ms. Whittington responded that she was "okay" with the proposed termination of plaintiff's employment.  *Id.* (quoting Def. Ex. 20).  During her deposition, Ms. Whittington testified that "the decision to terminate [plaintiff] was for not following policy for leaving [her] shift early on March 15th."  *See* Def. Mem. at 10; Def. Ex. 2 at 15-16 (Whittington Tr. 53-54); Def. Ex. 21.

On March 20, 2019, plaintiff failed to report to work.[2]  Def. Mem. at 9; Def. Ex. 14 at 12.  On March 21, 2019, Ms. Whittington, Ms. Smith and Ms. Morris met with plaintiff to inform her that her employment would be terminated.  Def. Mem. at 10; Def. Ex. 24.

Thereafter, plaintiff commenced this employment discrimination action on December 24, 2019.  *See generally* Compl.

**B.**     **Procedural Background**

Plaintiff commenced this action on December 24, 2019.  *See generally id.*  On June 7, 2021, Coastal filed a motion for summary judgment and a memorandum in support thereof.  *See generally* Def. Mot.; Def. Mem.  On July 5, 2021, plaintiff filed a response in opposition to Coastal's motion for summary judgment.  *See generally* Pl. Resp.  Coastal filed a reply in support of its motion for summary judgment on July 26, 2021.  *See generally* Def. Reply.

---

[2] It is undisputed that plaintiff requested to take off work on March 20, 2019, to attend a doctor's appointment.  Def. Mem. at 9; Def. Ex. 1 at 33, 39-40 (Tsague Tr. 135); Pl. Resp. at 4.  Plaintiff's request was denied because her sick leave had been exhausted.  Def. Reply at 8; Def. Exs. 14, 22.

Coastal's motion for summary judgment having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

### A.    Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *see also Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp.*, 477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id.* at 323.  And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Liberty Lobby*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment."  *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997).  And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for

that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### B.      Title VII Claims

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin.  *See* 42 U.S.C. § 2000e.  There are two methods for proving intentional discrimination in employment under Title VII:  (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

For the first method, "an employee may utilize ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Rhoads v. F.D.I.C.,* 257 F.3d 373 (4th Cir. 2001) (citation omitted).  To overcome a summary judgment motion based upon this method of proof, a plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Id.* at 607 (citation omitted) (brackets existing).  And so, a plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Id.* (citation omitted).

If direct or indirect evidence of intentional discrimination is lacking, a plaintiff may proceed under *McDonnell Douglas*.  *See Tuck v. Henkel Corp.*, 973 F.2d 371, 375 (4th Cir. 1992).  Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination.  *See McDonnell Douglas Corp.*, 411 U.S. at 802.  Specifically relevant to this employment discrimination dispute, a plaintiff may establish a prima facie case of discrimination by showing:  "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside [of] the protected class." *Coleman v. Md. Court of Appeals,* 626 F.3d. 187, 190 (4th Cir. 2010).

If a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged.  *See Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142

(2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  Should the defendant succeed in doing so, that showing will rebut the presumption of discrimination raised by the plaintiff's prima facie case.  *See Stokes v. Westinghouse Savannah River Co*., 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10).  The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas Corp*., 411 U.S. at 804).  And so, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her."  *Evans v. Tech. Applications & Serv. Co*., 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

Plaintiff also asserts a retaliation claim in this case.  Compl. at ¶¶ 37-48.  Title VII "prohibits an employer from retaliating against a worker for either participating in a Title VII proceeding or opposing an employer's discriminatory practices."  *Laughlin v. Metro. Wash. Airports Auth*., 149 F.3d 253, 255 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-3(a)).  A plaintiff lacking direct evidence of retaliation may also utilize the *McDonnell Douglas* framework to prove a claim of retaliation.  *See Foster v. Univ. of Md*., 787 F.3d 243, 250 (4th Cir. 2015).  To establish a prima facie case of retaliation, a plaintiff must establish by a preponderance of the evidence that: (1) she engaged in protected activity; (2) her employer acted adversely against her; and (3) the protected activity and the adverse action were causally connected.  *Holland v. Wash. Homes, Inc*., 487 F.3d 208, 218 (4th Cir. 2007); *see also Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001) (citing *Gibson v. Old Town Trolley Tours of Wash., D.C., Inc*., 160 F.3d 177, 180 (4th Cir. 1998)).  If plaintiff succeeds in establishing a prima facie case of retaliation, the Court follows the burden shifting framework established in *McDonnell Douglas*.

Lastly, to show that an employer's stated legitimate nondiscriminatory reason for an adverse employment action is a pretext for retaliation, a plaintiff "must show that the adverse action would not have occurred 'but for' the protected conduct."  *Dwyer v. Smith*, 867 F.2d 184, 191 (4th Cir. 1989) (quoting *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365-66 (4th Cir. 1985)).  Given this, it is not enough to show that the plaintiff perceived the defendant's motives to be retaliatory; rather, the important inquiry is what actually motivated the defendant's decision.  *See Evans*, 80 F.3d at 960 ("While a Title VII plaintiff may present direct or indirect evidence to support her claim of discrimination, unsupported speculation is insufficient.").  In this regard, a plaintiff's self-assessment of her own abilities is also not sufficient to establish

pretext or intentional retaliation.  *Id.* at 959 (citation omitted).  Rather, a plaintiff must produce objective evidence that the defendant's stated reasons are mere pretext and that the defendant's actions were the product of retaliatory intent, to avoid summary judgment on the issue of intentional retaliation.  *See Csicseri v. Bowsher*, 862 F. Supp. 547, 570-71 (D.D.C. 1994), *aff'd*, 67 F.3d 972 (D.C. Cir. 1995).

## IV.   LEGAL ANALYSIS

Coastal has moved for summary judgment in its favor on the issues of whether plaintiff can establish a prima facie case of discrimination and whether plaintiff can show pretext to prevail on her discrimination and retaliation claims.  *See generally* Def. Mem.  Specifically, Coastal argues that plaintiff cannot prevail on her employment discrimination claim because:  (1) plaintiff was not meeting Coastal's legitimate expectations at the time of her termination and (2) plaintiff cannot show that she was terminated under circumstances that give rise to an inference of illegal discrimination.  Def. Mem. at 13-16.  Coastal further argues that plaintiff cannot prevail on her discrimination and retaliation claims, because it has provided a legitimate nondiscriminatory reason for plaintiff's termination and plaintiff cannot show that this reason was a pretext for discrimination or retaliation.  *Id.* at 16-17.[3]

In her response in opposition to Coastal's motion for summary judgment, plaintiff counters that she can establish a prima facie case of discrimination, because:  (1) she is a member of a protected class who suffered an adverse employment action; (2) she was meeting Coastal's legitimate expectations at the time of her termination; and (3) she was treated differently than non-African employees.  Pl. Resp. at 8-15.  In addition, plaintiff argues that she can prevail on her discrimination and retaliation claims, because she can show that Coastal's stated reason for terminating her employment was pretextual.  *Id.* at 15-17.

For the reasons that follow, the undisputed material facts in this case show that:  (1) Coastal was plaintiff's employer; (2) plaintiff was not meeting Coastal's legitimate expectations at the time of her termination; and (3) plaintiff cannot show that Coastal's stated reason for

---

[3] In its opening brief, Coastal also argues that it is not plaintiff's employer.  *See* Def. Mem. at 12.  But, Coastal appears to abandon this argument in its reply brief.  *See generally* Def. Reply.

terminating her employment was pretextual.  And so, the Court GRANTS-in-PART Coastal's
motion for summary judgment.  Fed. R. Civ. P. 56.

>    **A.**    **The Undisputed Material Facts Show That Coastal Is Plaintiff's Employer**

As an initial matter, to the extent that Coastal argues that it was not plaintiff's employer,
the undisputed material facts show that plaintiff was employed by Coastal.  In this regard, it is
undisputed that plaintiff's employee handbook acknowledgment form states that plaintiff has
entered into an employment relationship with East Coast Fresh and Coastal.  Pl. Resp. at 7; Def.
Ex. at 1.  It is also undisputed that East Coast Fresh is a subsidiary of Coastal.  Def. Mem. at 1;
Pl. Resp. at 7-8.  Given these undisputed facts, there can be no genuine dispute that Coastal is
plaintiff's employer.

>    **B.**    **The Undisputed Material Facts Show That Plaintiff**
>             **Was Not Meeting Coastal's Legitimate Expectations**

The undisputed material facts also make clear that plaintiff cannot establish a prima facie
case of discrimination, because she was not meeting Coastal's legitimate expectations at the time
of her termination.  To prevail on her employment discrimination claim, plaintiff must show,
among other things, a satisfactory job performance.  *Coleman*, 626 F.3d. at 190.  Plaintiff cannot
make such a showing here for several reasons.

First, the undisputed material facts show that plaintiff received multiple warnings and
disciplinary notices in the weeks preceding her termination.  Def. Mem. at 3-5; Pl. Resp. at 3.  In
this regard, it is undisputed that plaintiff's supervisor, Ms. Smith, and two human resources
employees met with plaintiff on January 21, 2019, to discuss a variety of performance concerns
that arose in January 2019.  *See* Def. Mem. at 3; Def. Exs. 7-9; Pl. Resp. at 3.  Plaintiff also
acknowledges that she received a written warning for disrespectful communication with
coworkers and supervisors, related to an event that occurred on January 17, 2019.  Pl. Resp. at 3.

The undisputed material facts also show that plaintiff received a time and attendance
warning on January 21, 2019.  Def. Mem. at 4-5; Def. Ex. 8; Pl. Resp. at 3.  In addition, plaintiff
received a warning for a minor good manufacturing processes violation on January 16, 2019, and
she had a conversation with Ms. Smith regarding her lunch break on January 18, 2019.  Def.
Mem. at 4-5; Def. Exs. 7, 9-10; Pl. Resp. at 3.  While plaintiff disagrees with these various

warnings, she does not dispute that they occurred, nor does she put forward evidence to show they were unwarranted.  *See* Pl. Resp. at 3-4.

It is similarly undisputed in this case that plaintiff left her shift early on March 15, 2019, and that Ms. Smith and Ms. Whittington believed that plaintiff's absence was unauthorized, resulting in her termination.  Def. Mem. at 7-9; Pl. Resp. at 10-11.  Plaintiff disputes that her absence from work was not authorized.  Pl. Resp. at 16-17 (arguing that her immediate supervisor, "Martha," approved the absence).  But, there is no dispute that the supervisors who terminated plaintiff's employment believed that her absence on March 15, 2019, was unauthorized.  Def. Mem. at 7-8; Pl. Resp. at 11.

Given this, the undisputed material facts in this case show that plaintiff was not meeting the legitimate expectations of her employer at the time of her termination.  And so, plaintiff cannot prevail on her discrimination claim.  *See King v. Rumsfeld*, 328 F.3d 145, 150 (4th Cir. 2003) ("Because [plaintiff] cannot establish that his job performance satisfied [employer's] legitimate expectations, and so cannot establish a prima facie case, his other allegations . . . are irrelevant to the inquiry.").

The Court also observes that, even if plaintiff could show that her job performance was satisfactory, she cannot establish that Coastal's stated reason for terminating her employment was a pretext for discrimination.  *Burdine*, 450 U.S. at 253 (stating that a plaintiff must prove, by a preponderance of the evidence, "that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination").  While plaintiff contends that Coastal's stated reason for terminating her employment is false—because her immediate supervisor, "Martha," approved her early departure on March 15, 2019—a finding that Coastal's reason for terminating plaintiff is false is not sufficient to show pretext.  *See* Pl. Resp. at 10; *see also Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (holding that plaintiff must show that *"both* the reason [for her termination] was false, *and* that discrimination was the real reason [for her termination]") (emphasis in original).  Plaintiff points to no facts to show that the real reason for her termination was discrimination.  *See generally* Pl. Resp.  And so, the Court GRANTS Coastal's motion for summary judgment on this issue.

### C.      Plaintiff Cannot Show Pretext To Prove Her Retaliation Claim

Plaintiff's retaliation claim is problematic for similar reasons.  The parties agree that plaintiff can state a prima facie case of retaliation.  Def. Mem. at 16; Pl. Resp. at 15; *see also Holland,* 487 F.3d at 218 (stating that a plaintiff must show that:  (1) she engaged in protected activity; (2) the employer took an adverse action against her; and (3) the protected activity and the adverse action were causally connected, to state a prima facie case of retaliation).  But, the undisputed material facts show that plaintiff cannot show that Coastal's stated reason for terminating her employment was a pretext for retaliation.

Plaintiff argues that Coastal's stated reason for her termination is a pretext for retaliation, because she left work early on several other occasions without incident, prior to the filing of her letter of complaint.  Pl. Resp. at 16-17.  But, plaintiff's argument is misguided, because Coastal states that it terminated her employment due to her unauthorized absence from work, not because of the time that plaintiff left work on March 15, 2019.  Def. Reply at 2-3.  For this same reason, plaintiff's reliance upon the timecards that she and other employees submitted is misplaced, because these timecards do not address whether any of these employees received approval to leave work early.  Pl. Resp. at 16-17.

Plaintiff also points to no other facts or evidence to show that Coastal terminated her employment in retaliation for filing her letter of complaint against Ms. Smith.  *See id.*  Given this, plaintiff's speculation that she was terminated in retaliation for engaging in this protected activity is simply not enough to prevail on her retaliation claim.  *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) ("While a Title VII plaintiff may present direct or indirect evidence to support her claim of discrimination, unsupported speculation is insufficient.").  And so, the Court also GRANTS Coastal's motion for summary judgment on this final issue.  Fed. R. Civ. P. 56.

### V.      CONCLUSION

In sum, the undisputed material facts in this case show that:  (1) Coastal was plaintiff's employer; (2) plaintiff was not meeting Coastal's legitimate expectations at the time of her termination; and (3) plaintiff cannot show that Coastal's stated reason for terminating her employment was pretextual.  And so, for the foregoing reasons, the Court:

1.      **GRANTS-in-PART** Coastal's motion for summary judgment; and

2.      **DISMISSES** the complaint.

The Clerk is directed to enter judgment accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**


s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge